[Cite as *State v. Earnest*, 2015-Ohio-3913.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | C.A. CASE NO.   26646 |
| | : | |
| v. | : | T.C. NO. 14CR3928/1 |
| | : | |
| BRANDI J. EARNEST | : | (Criminal Appeal from |
| | : |  Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

# O P I N I O N

Rendered on the ___25th___ day of ____September____, 2015.

. . . . . . . . . .

CARLEY J. INGRAM, Atty. Reg. No. 0020084, Assistant Prosecuting Attorney, 301 W. Third Street, 5th Floor, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

GARY C. SCHAENGOLD, Atty. Reg. No. 0007144, 4 East Schantz Avenue, Dayton, Ohio 45409
      Attorney for Defendant-Appellant

BRANDI J. EARNEST, Inmate #W091-979, Ohio Reformatory for Women, 1479 Collins Avenue, Marysville, Ohio 43040
      Defendant-Appellant

. . . . . . . . . . . .

FROELICH, P.J.

{¶ 1} After the trial court overruled her motion to suppress, Brandi J. Earnest pled no contest to complicity to commit aggravated robbery, a first-degree felony.   The charge

arose out of the robbery of a Little Caesar's pizza store, of which Earnest was an employee. The trial court found her guilty and sentenced her to four years in prison. Earnest was ordered to pay restitution to Little Caesar's Enterprises in the amount of $2,041.46 and court costs. Earnest appeals from her conviction.

{¶ 2} Earnest's counsel has filed a brief pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), stating that after thoroughly examining the record and the law, he "has been unable to locate a viable issue on appeal." Counsel identified potential assignments of error related to the trial court's denial of Earnest's motion to suppress, the trial court's plea hearing, and Earnest's sentence. By entry, we informed Earnest that her attorney had filed an *Anders* brief on her behalf and granted her 60 days from that date to file a pro se brief. No pro se brief was filed.

{¶ 3} We have conducted our independent review of the record pursuant to *Penson v. Ohio*, 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988), and we agree with appellate counsel that there are no non-frivolous issues for review.

### I. Motion to Suppress

{¶ 4} Detective Vincent Mason of the Kettering Police Department testified at the suppression hearing. His testimony, which the trial court found to be credible, established the following facts.

{¶ 5} At approximately 10:30 a.m. on September 7, 2014, the Little Caesar's pizza store on East Dorothy Lane in Kettering was robbed; Earnest and another employee, Emily Gilley, were working there at the time. Money and two cell phones were reportedly taken during the robbery. Detective Mason was working dispatch that day, but he was asked to attempt to "ping" the two telephones, one of which belonged to Earnest. Mason

could not ping Earnest's cell phone because Earnest did not know the number, and the other phone could not be pinged due to the type of cell phone it was.

**{¶ 6}** The next day, September 8, Detective Mason was assigned the robbery as the lead detective. He reviewed the videotape of the Little Caesar's robbery and saw three people: Earnest, Gilley, and a suspect dressed all in black. Mason went to Gilley's and Earnest's residences to speak with them about the robbery.

**{¶ 7}** Detective Mason drove to Earnest's residence in a city-issued "regular" car (not a police cruiser), a 2010 Ford Escape. Detective Mason testified that he wanted to speak with Earnest to get her side of the story, information about the suspect, and get her cell phone number. Mason stated it was "basic information-gathering in connection with the investigation." Earnest was not a suspect at the time.

**{¶ 8}** Earnest agreed to talk to Mason, but they went outside so as to not disturb Earnest's baby, who was sleeping. Earnest and Detective Mason sat in the rear of Earnest's vehicle; another detective, Detective McGuire, sat in the front passenger seat. Detective Mason stated that Earnest was not patted down before entering the vehicle, and she was not handcuffed. The doors were closed because of the cold weather, but the doors were not locked.

**{¶ 9}** The next day, September 9, Detective Mason received a phone call from Earnest; Earnest gave the detective the phone number that she said belonged to the cell phone that had been taken. Detective Mason learned the identity of the phone company that the cell number belonged to and obtained a warrant for information from the phone company. A couple of weeks later, Mason received information from the phone company that the phone number had been activated on September 8, four or five hours after Mason

had spoken with Earnest at her apartment. The number had not been active before then.

{¶ 10} Detective Mason contacted Earnest about the cell phone number and talked with her several times at Little Caesar's over the next couple of months in connection with the investigation. The detective told Earnest that he needed the phone number for the phone that was taken during the robbery. The conversations occurred outside the store.

{¶ 11} On October 23, 2014, Earnest called Detective Mason with another phone number for the phone that was taken. The detective obtained the phone records for this number.

{¶ 12} On November 6, 2014, Detective Mason attempted to call Earnest, but the phone number he had was turned off. The detective tried another number he had for Earnest and reached Mike Class, who lived with Earnest. Mason asked Class for the phone number from the phone that was taken during the robbery. Class responded that there was no phone taken during the robbery. Class provided Mason a different phone for Earnest. Detective Mason became suspicious and ordered the phone records for Class's phone number and the number Class provided for Earnest. There were no calls on either phone at the time of the robbery.

{¶ 13} On November 11, 2014, Detective Mason went to Little Caesar's and spoke with Earnest, who was the acting manager, about an unrelated matter involving counterfeit money that was passed through the store. Earnest started sweating profusely.

{¶ 14} The next day, November 12, a Kettering police officer advised Detective Mason that Earnest had reported that she had taken the bank bag home instead of depositing it and that it (and other items) had been stolen out of her car. Detectives

Mason and McGuire went to Earnest's apartment complex and searched the dumpsters there. They located the bank bag on top of other garbage in a dumpster. The detectives knocked on Earnest's door, but there was no answer.

{¶ 15} On November 13, Detective Mason called Earnest and told her that he needed to talk to her about the bank bag and the thefts from her vehicle. Earnest stated that she had to go to work and asked the detective to meet her there. Detectives Mason and Winters drove to the Little Caesar's in Mason's city-issued car and waited. When Earnest arrived, she acknowledged the detectives and went into the store. She came back out approximately 15 minutes later.

{¶ 16} Earnest spoke with the detectives in the back of Mason's vehicle. She was not handcuffed, patted down, or placed under arrest; Mason stated that he does not carry handcuffs with him. Detective Mason spoke to Earnest about both the bank bag incident and the robbery of the Little Caesar's. He informed Earnest that she was a suspect in the robbery. Mason told Earnest, "You're going home no matter what" and that he would need to talk to a prosecutor to see what a prosecutor wanted to do with the case. Mason asked most of the questions, although Detective Winters asked a couple. No promises were made to Earnest. Earnest made several statements about what had occurred. Detective Mason asked Earnest to write a statement after they were finished talking. Earnest agreed, and she wrote it in the back seat of the car. Earnest left the vehicle afterward. Detective Mason did not provide Earnest with *Miranda* warnings at any time during their conversation.

{¶ 17} On November 17, 2014, Earnest was arrested and charged by complaint in the Kettering Municipal Court with complicity to commit aggravated robbery (deadly

weapon). A grand jury indicted Earnest for complicity to commit aggravated robbery on December 11, 2014. Earnest pled not guilty.

{¶ 18} On December 29, 2014, Earnest moved to suppress the evidence against her, including her oral and written statements. The suppression hearing was limited to whether Earnest's statements were made while she was in custody and thus obtained in violation of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The trial court subsequently overruled Earnest's motion, finding that none of Detective Mason's various interviews with Earnest occurred in a custodial setting and, thus, *Miranda* did not apply.

{¶ 19} On appeal, appellate counsel raises as a potential assignment of error that the trial court erred in overruling her motion to suppress. We agree that with counsel that the record establishes that she was not in custody when her statements were made and that an appeal of the trial court's suppression ruling is frivolous.

{¶ 20} In ruling on a motion to suppress, the trial court "assumes the role of the trier of fact, and, as such, is in the best position to resolve questions of fact and evaluate the credibility of the witnesses." *State v. Retherford*, 93 Ohio App.3d 586, 592, 639 N.E.2d 498 (2d Dist.1994); *State v. Knisley*, 2d Dist. Montgomery No. 22897, 2010-Ohio-116, ¶ 30. Accordingly, when we review suppression decisions, we must accept the trial court's findings of fact if they are supported by competent, credible evidence. *Retherford* at 592. "Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard." *Id.*

{¶ 21} Under the Fifth Amendment to the United States Constitution, no person

shall be compelled to be a witness against himself or herself. In order to ensure that this right is protected, statements resulting from custodial interrogations are admissible only after a showing that the procedural safeguards described in *Miranda* have been followed. *In re R.L.*, 2014-Ohio-5065, 23 N.E.3d 298, ¶ 17 (2d Dist.), citing *In re Haubeil*, 4th Dist. Ross No. 01CA2631, 2002-Ohio-4095, ¶ 9.

{¶ 22} *Miranda* defined custodial interrogation as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda* at 444. "[T]he ultimate inquiry is simply whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler*, 463 U.S. 1121, 1125, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983), citing *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977). The inquiry whether a person is subject to custodial interrogation focuses upon how a reasonable person in the suspect's position would have understood the situation. *Berkemer v. McCarty*, 468 U.S. 420, 442, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984). The subjective views of the interviewing officer and the suspect are immaterial to the determination of whether a custodial interrogation was conducted. *Stansbury v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994); *State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632, ¶ 50 (2d Dist.).

{¶ 23} Here, none of the face-to-face interviews with detectives in Detective Mason's vehicle, which was not a police cruiser, was conducted in a custodial setting; the same is true with respect to the telephone conversations. With respect to the interviews in Mason's vehicle specifically, Earnest agreed to speak with detectives in that setting; the conversation on September 8 occurred in Mason's vehicle because Earnest did not

want to speak in her apartment, for fear of waking her baby. For each of the interviews, Earnest was not patted down prior to entering the vehicle, she was not handcuffed, and the doors were not locked. The detectives wore plain clothes and did not display their weapons. The interviews lasted 15 to 20 minutes, and Earnest returned to her apartment or place of employment after the interviews. Because Earnest was not in custody when the interviews occurred, the detectives were not required to provide *Miranda* warnings.

## II. Plea Hearing and Sentencing

{¶ 24} With respect to Earnest's plea hearing, appellate counsel states that the plea transcript "demonstrates substantial, if not model compliance," with Crim.R. 11. Counsel further notes that Earnest's sentence was within the agreed sentencing range

{¶ 25} Crim.R. 11(C)(2) requires the court to address the defendant personally and (a) determine that the defendant is making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions; (b) inform the defendant of and determine that the defendant understands the effect of the plea of guilty and that the court, upon acceptance of the plea, may proceed with judgment and sentencing; and (c) inform the defendant and determine that he or she understands that, by entering the plea, the defendant is waiving the rights to a jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses, and to require the State to prove guilt beyond a reasonable doubt at a trial at which he or she cannot be compelled to testify against himself or herself. *State v. Brown*, 2d Dist. Montgomery No. 21896, 2007-Ohio-6675, ¶ 3.

{¶ 26} The Supreme Court of Ohio has urged trial courts to literally comply with

Crim.R. 11. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 29. However, because Crim.R. 11(C)(2)(a) and (b) involve non-constitutional rights, the trial court need only substantially comply with those requirements. *E.g., State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Id.* In contrast, the trial court must strictly comply with Crim.R. 11(C)(2)(c), as it pertains to the waiver of federal constitutional rights. *Clark* at ¶ 31.

{¶ 27} Furthermore, when non-constitutional rights are at issue, a defendant who challenges his plea on the basis that it was not knowingly, intelligently, and voluntarily made generally must show a prejudicial effect. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 17. Prejudice in this context means that the plea would otherwise not have been entered. *Id.* at ¶ 15.

{¶ 28} Upon review of the transcript of the plea hearings, we agree with appellate counsel that no arguably meritorious claims exist concerning Earnest's plea. The trial court fully complied with the requirements of Crim.R. 11.

{¶ 29} Finally, the parties agreed as part of Earnest's plea agreement that Earnest would receive a sentence between three and five years in prison. Having pled no contest to a first-degree felony, Earnest was subject to a sentence between three years and eleven years in prison. The trial court imposed a four-year sentence, which was within both the statutory range and the agreed-upon range. Moreover, Earnest had previously been sentenced to prison on two occasions. In 2007, she was sentenced in two separate cases to one year for a robbery that occurred in December 2006 and to seven months for

a burglary that occurred in November 2006.

**{¶ 30}** The trial court imposed restitution and court costs; in doing so, the court stated that it had considered Earnest's present and future ability to pay those sums. The amount of restitution, $2,041.46, was the amount provided by the Little Caesar's regional loss prevention manager in the presentence investigation report. The court properly imposed post-release control. We find no arguable error in the trial court's imposition of sentence.

## IV. Conclusion

**{¶ 31}** In accordance with our obligation under *Penson*, we have reviewed the entire record, including the transcripts of the suppression, plea, and sentencing hearings. Based on the record, we find this appeal is frivolous. Accordingly, the trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and WELBAUM, J., concur.

Copies mailed to:

Carley J. Ingram
Gary C. Schaengold
Brandi J. Earnest
Hon. Mary L. Wiseman