[Cite as *State v. Mattox*, 2018-Ohio-992.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 27518 |
| | : | |
| v. | : | Trial Court Case No. 2015-CR-2108 |
| | : | |
| DAVID G. MATTOX | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 16th day of March, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ALICE B. PETERS, Atty. Reg. No. 0093945, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellee

THOMAS M. KOLLIN, Atty. Reg. No. 0066964, 3725 Pentagon Boulevard, Suite 270, Beavercreek, Ohio 45431
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant, David G. Mattox, appeals from his convictions on a series of charges under R.C. 2905.01(A)(4), 2907.02(A)(1)(b), 2907.05(A)(4) and 2907.323(A)(1). Mattox argues that his convictions should be vacated because the trial court erred by refusing to suppress statements he made during interviews at the Miami Township Police Department; by overruling his motion for acquittal under Crim.R. 29; and by disregarding the manifest weight of the evidence in finding him guilty. Having reviewed the briefs and the record, we find that the trial court correctly deemed Mattox's statements to be admissible; that the court properly overruled his motion for acquittal; and that the convictions were justified by the evidence. Therefore, we affirm.

## I. Facts and Procedural History

{¶ 2} In 2013, a detective with the Miami Township Police Department asked Mattox to be interviewed in response to an allegation that he had sexually abused a minor. Mattox complied with the request, and on September 18, 2013, he participated in a roughly 30 to 40 minute interview with the detective at the department's offices. Tr. of Proceedings 9:3-9:18 and 23:2-23:5. The investigation came to a close without the filing of any charges because of a lack of evidence. *Id.* at 12:11-12:21.

{¶ 3} Prompted by new allegations, the department reopened the investigation in 2014, and the detective requested that Mattox return for another interview. *Id.* Mattox arrived at the department's offices for his second interview on December 8, 2014. *Id.* The reopened investigation resulted in charges, and on July 16, 2015, officers arrested Mattox. *Id.* at 15:10-15:21. Later that day, after Mattox executed a written waiver of his *Miranda* rights, the detective interviewed him for the third time. *Id.* at 16:22-18:20.

{¶ 4} A Montgomery County grand jury issued an indictment against Mattox on July 24, 2015 ("Indictment A"), charging him with seven counts of gross sexual imposition against a person less than 13 years of age, in violation of R.C. 2907.05(A)(4); two counts of gross sexual imposition through the use of force or the threat of force, in violation of R.C. 2907.05(A)(1); two counts of kidnapping, in violation of R.C. 2905.01(A)(4); 13 counts of rape of a person less than 13 years of age, in violation of R.C. 2907.02(A)(1)(b); and one count of rape through the use of force or the threat of force, in violation of R.C. 2907.02(A)(2). [1]   On July 31, 2015, the grand jury issued a second indictment ("Indictment B"), charging Mattox with 10 counts of illegal use of a minor in nudity-oriented materials or performances, in violation of R.C. 2907.323(A)(1).   Mattox pleaded not guilty to both of the indictments.

{¶ 5} On August 19, 2015, Mattox moved to suppress the statements he made during his three interviews at the Miami Township Police Department.   In his motion, Mattox argued that the statements should be suppressed because he did not waive his *Miranda* rights; because officers "questioned [him] multiple times without advising him" of his rights; and because he "did not fully understand all of the rights that were allegedly read to him."   Def.'s Mot. to Suppress 3, Aug. 19, 2015.   Following a hearing on October 2, 2015, the trial court overruled the motion.   Decision & Entry Overruling Def.'s Mot. to Suppress 2-3, Oct. 14, 2015.

{¶ 6} Mattox executed a jury waiver on July 11, 2016, and his case proceeded to a bench trial beginning on January 31, 2017.   At the conclusion of the trial on February 8, 2017, the court found Mattox guilty on seven counts of rape of a person less than 13

---

[1] The State filed an amended version of Indictment A on August 12, 2015.

years of age under R.C. 2907.02(A)(1)(b) (Counts 1-4, 7-8 and 22 of Indictment A); two counts of kidnapping under R.C. 2905.01(A)(4) (Counts 9-10 of Indictment A); two counts of gross sexual imposition against a person less than 13 years of age under R.C. 2907.05(A)(4) (Counts 11-12 of Indictment A); and nine counts of illegal use of a minor in nudity-oriented materials or performances under R.C. 2907.323(A)(1) (Counts 2-10 of Indictment B).[2]  Tr. of Proceedings 913:3-918:17.  The court filed a termination entry on March 27, 2017, and Mattox filed his notice of appeal to this court on March 30, 2017.

## II. Analysis

{¶ 7} For his first assignment of error, Mattox contends that:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS.

{¶ 8} Mattox argues that the trial court should have suppressed the statements he made during his interviews at the Miami Township Police Department in 2013 and 2014 because the detective who conducted the interviews failed to advise him of his *Miranda* rights.[3]  Appellant's Br. 5-7.  With respect to his 2015 interview, Mattox concedes that he executed a written *Miranda* waiver but argues that the waiver was invalid because the detective failed to explain all of the charges against him and ignored what might have been a request to speak with an attorney.  *Id.* at 7.

---

[2] It found Mattox not guilty on the remaining counts of Indictment A, other than Count 25. The State dismissed Count 25 of Indictment A and Count 1 of Indictment B.  *See* Tr. of Proceedings 84:3-84:12 and 921:2-921:17.

[3] The trial court did not expressly find as a matter of fact that the detective failed to deliver *Miranda* warnings before commencing the interviews in 2013 and 2014, and the State never expressly admits as much in its brief.  *See generally* Decision & Entry Overruling Def.'s Mot. to Suppress, Oct. 14, 2015; Appellee's Br. 16-20.

**{¶ 9}** Appellate "review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. As the trier of fact, a trial court "is in the best position to weigh * * * evidence * * * and evaluate [the credibility of] witness[es]," so an "appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.*, citing *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 9, citing *State v. Cruz*, 12th Dist. Preble No. CA2013-10-008, 2014-Ohio-4280, ¶ 12. Accepting the trial court's findings of fact as true, "the appellate court must then independently determine, without deference to the [trial court's legal] conclusion[s]," whether the "facts satisfy the applicable * * * standard." *Burnside*, 2003-Ohio-5372, ¶ 8, citing *Fanning*, 1 Ohio St.3d 19, and *State v. McNamara*, 124 Ohio App.3d 706, 707 N.E.2d 539 (3d Dist.1997).

**{¶ 10}** Regarding Mattox's interviews in 2013 and 2014, the trial court determined that *Miranda* warnings were not required because Mattox was not in police custody in either instance. Decision & Entry Overruling Def.'s Mot. to Suppress 2-3. The "procedural safeguards prescribed by *Miranda* apply only when [a] person [is] subjected to [a] 'custodial interrogation.' " *State v. Thomas*, 2d Dist. Montgomery No. 20643, 2005-Ohio-3064, ¶ 27, citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). In this context, an interrogation would be "custodial" if the person were formally arrested or if the person's freedom of movement were restrained to the degree normally associated with a formal arrest. *Id.*, citing *California v. Beheler*, 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983).

**{¶ 11}** For purposes of determining whether an interview is custodial, the

"subjective views" of the interviewer and the person being interviewed "are immaterial"; instead, the determination should focus on the essentially objective question of whether "a reasonable person in the [same] position" would feel "at liberty to terminate the interview and leave." *State v. Ferguson*, 2017-Ohio-7930, ___ N.E.3d ___, ¶ 70 (2d Dist.), citing *Stansbury v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994), and *State v. Hatten*, 186 Ohio App.3d 286, 2010-Ohio-499, 927 N.E.2d 632, ¶ 50 (2d Dist.); *State v. Magnone*, 2016-Ohio-7100, 72 N.E.3d 212, ¶ 22 (2d Dist.), citing *State v. Hoffner*, 102 Ohio St.3d 358, 2004-Ohio-3430, 811 N.E.2d 48, ¶ 27, and *State v. Earnest*, 2d Dist. Montgomery No. 26646, 2015-Ohio-3913, ¶ 22; *State v. Chenoweth*, 2d Dist. Miami No. 2010 CA 14, 2011-Ohio-1276, ¶ 8, citing *Beheler*, 463 U.S. at 1125. Among others, the factors a court should consider in applying this standard are: the location of the interview; the duration of the interview; whether the interviewee is physically restrained; whether the interviewee is threatened or tricked; and whether the interviewee is released at the end of the interview. *See Howes v. Fields*, 565 U.S. 499, 509, 132 S.Ct. 1181, 182 L.Ed.2d 17 (2012); *see also*, *e.g.*, *Magnone*, 2016-Ohio-7100, ¶ 23.

{¶ 12} Here, the trial court determined that a reasonable person in Mattox's position would have felt free to leave the interviews in 2013 and 2014. *See* Decision & Entry Overruling Def.'s Mot. to Suppress 2-3. Mattox maintains, to the contrary, that he was effectively in custody during both of the interviews, given that: (1) he "came to the police station at the request of a detective," rather than "show[ing] up * * * on his own accord"; (2) when he arrived, the detective escorted him from the lobby to the interview-room; (3) the detective at least partially obstructed his path out of the room; and (4) the

detective informed him that he was a suspect. Appellant's Br. 6-7. As well, Mattox notes that the detective kept the door to the room closed during his interview in 2013. *Id.*

**{¶ 13}** We concur with the trial court's determination. Notwithstanding that the detective informed Mattox that he was a suspect and asked him to come to the Miami Township Police Department for the 2013 and 2014 interviews, Mattox "voluntarily appeared" there in response to the detective's request, and he "was permitted to leave on both occasions." Decision & Entry Overruling Def.'s Mot. to Suppress 2; Tr. of Proceedings 9:3-13:25 and 15:7-15:9. Although the detective escorted Mattox from the lobby to the interview-room, a reasonable person would not necessarily expect to have unlimited freedom of movement in a secure facility such as a police station, and before each of the interviews, the detective informed Mattox that he had no obligation to answer any questions, that he was not under arrest, and that he was free to leave. *See id.* On neither occasion, for that matter, was Mattox handcuffed, "threatened, physically intimidated, overpowered, tricked, or coerced." Decision & Entry Overruling Def.'s Mot. to Suppress 2; Tr. of Proceedings 9:3-13:25 and 20:13-26:19. We note, as well, that the interview in 2013 lasted for 30 to 40 minutes, which would not seem to be unreasonable.[4] Tr. of Proceedings 23:2-23:7; *compare with Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977).

**{¶ 14}** Certain aspects of the interviews, however, could be characterized as daunting or unnerving, particularly because Mattox knew that he had been accused of serious crimes. *See* Tr. of Proceedings 23:2-23:15. For instance, Mattox would not

---

[4] The record is silent on the duration of the 2014 interview. In any event, Mattox offers no argument that the duration of any of his three interviews created, or contributed to, a coercive atmosphere. Appellant's Br. 5-7.

have been able to exit the interview-room unless the detective moved out of his way, and during the 2013 interview, the detective kept the door closed. *Id.* at 21:16-23:1 and 24:1-26:19. Yet, "[a]ny interview of [a person] suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the [person] to be charged with a crime." *Mathiason*, 429 U.S. at 495. In other words, because a person participating in an interview with a police officer will—almost unavoidably—experience some degree of subjective discomfiture, an otherwise non-custodial interview should not be deemed custodial solely because the situation itself causes the person to feel anxious. *See id.*; *State v. Ferguson*, 2017-Ohio-7930, ___ N.E.3d ___, ¶ 70 (2d Dist.).

{¶ 15} Mattox might have felt nervous within the confines of the interview room in 2013 and 2014. Even so, he had not been arrested, was duly advised that he did not have to participate in the interviews, was not handcuffed or physically restrained, and was allowed to leave freely on both occasions. Accordingly, we find that in circumstances equivalent to Mattox's interviews in 2013 and 2014, a reasonable person would have felt free "to terminate the interview[s] and leave." *Ferguson*, 2017-Ohio-7930, ¶ 70.

{¶ 16} Regarding his post-arrest interview in 2015, Mattox acknowledges that he signed a written *Miranda* waiver. Appellant's Br. 2-3. He argues nevertheless that he did not validly waive his *Miranda* rights because the detective did not explain all of the charges against him and "continued to question [him] after he said something about an attorney." *Id.* at 8.

{¶ 17} A "suspect may effectively waive [his *Miranda*] rights * * * only if the waiver is made voluntarily, knowingly and intelligently." *State v. Dailey*, 53 Ohio St.3d 88, 91,

559 N.E.2d 459 (1990), citing *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Thus, a court "may properly" recognize the validity of a person's waiver of *Miranda* rights only if it finds that: (1) "the relinquishment of the right[s] [was] voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception"; and (2) the person had "a full awareness of * * * the nature of the right[s] being abandoned and the consequences of the decision to abandon [them]." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986); *see also Dailey*, 53 Ohio St.3d at 91. If the court "determine[s] that a [person]'s decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the State's intention to use his statements to secure a conviction, [then] the analysis is complete[,] and the waiver is valid as a matter of law." *Id.* at 422-423.

{¶ 18} Mattox's waiver fulfills the requirements set forth by the U.S. Supreme Court in its *Moran* decision. With respect to Mattox's complaint that the detective did not list or explain every charge against him, a *Miranda* waiver is "not vitiated as a result of the failure of [a] police officer * * * to explain the nature of the charges against [a] person being interrogated[]." *State v. Daniels*, 2d Dist. Montgomery No. 18650, 2001 WL 630558, *1 (June 8, 2001), citing *Colorado v. Spring*, 479 U.S. 564, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987). On the other hand, the fact that the detective would continue to question Mattox after he "said something about an attorney" raises a concern, but merely speaking the word "attorney" is not equivalent to a request for representation. *See* Appellant's Br. 13; Tr. of Proceedings 43:24-44:7. Furthermore, Mattox conspicuously makes no claim that he actually attempted to invoke his right counsel, and when asked whether Mattox had

"use[d] the word 'lawyer' or 'attorney' " during the interview, the detective testified that Mattox "<u>didn't request one</u>," though he might have "said something about an attorney."[5] (Emphasis added.)   Tr. of Proceedings 43:24-44:7.   The trial court credited the detective's testimony, and we find no basis in the record to contradict this assessment.

{¶ 19} We hold that Mattox's interviews in 2013 and 2014 were non-custodial and that he validly waived his *Miranda* rights in advance of his post-arrest interview in 2015. Therefore, the trial court properly denied his motion to suppress.   Mattox's first assignment of error is overruled.

{¶ 20} Mattox's second and third assignments of error implicate related standards of review, so we address them together.   For his second assignment of error, Mattox contends that:

THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTIONS FOR ACQUITTAL BECAUSE THERE WAS INSUFFICIENT EVIDENCE FOR A REASONABLE FACT FINDER TO FIND THAT THE APPELLANT WAS GUILTY BEYOND A REASONABLE DOUBT.[6]

{¶ 21} And for his third assignment of error, Mattox contends that:

THE TRIAL COURT ERRED IN FINDING THE APPELLANT GUILTY BECAUSE THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

---

[5] In his motion to suppress, Mattox did not claim that he requested counsel, meaning that he has arguably forfeited the issue on appeal.   (Citation omitted.)   *See State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15; *City of Xenia v. Wallace*, 37 Ohio St.3d 216, 218-219, 524 N.E.2d 889 (1988).

[6] Mattox made only one motion for acquittal.

{¶ 22} Mattox argues that the trial court should have sustained his motion for acquittal under Crim.R. 29(A) because the State did not produce sufficient evidence to support a conviction on any of the charges against him. Appellant's Br. 9. In the alternative, he argues that his "convictions were against the manifest weight of the evidence," pointing out a series of purported conflicts in the testimony. *Id.* at 9-10.

{¶ 23} An appellate court reviews a trial court's ruling on a motion under Crim.R. 29 by the same standard applicable to a claim based on the sufficiency of the evidence. *State v. Scott*, 2018-Ohio-198, ___ N.E.3d ___, ¶ 37 (2d Dist.), citing *State v. Bailey*, 2d Dist. Montgomery No. 27177, 2017-Ohio-2679, ¶ 17. Sufficiency of the evidence "is the legal standard applied to determine whether * * * the evidence [in a given case] is [adequate] as a matter of law to support the jury['s] verdict." *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On review of a challenge to a conviction based upon the sufficiency of the evidence, the " 'relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 24} In a challenge based on the weight of the evidence, an appellate court must review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial. *Thompkins*, 78 Ohio St.3d at 387, citing *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Hill*, 2d Dist. Montgomery No. 25172,

2013-Ohio-717, ¶ 8. A trial court's "judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Hill*, 2013-Ohio-717, ¶ 8, quoting *Martin*, 20 Ohio App.3d at 175. Because "a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency," a determination that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. (Citation omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11; *State v. Miller*, 2d Dist. Montgomery No. 25504, 2013-Ohio-5621, ¶ 48, citing *McCrary*, 2011-Ohio-3161, ¶ 11.

**{¶ 25}** Regarding Mattox's argument that his convictions were against the manifest weight of the evidence, he presents a list of five examples to illustrate that "the testimony on which the convictions are based [is] conflicting[] [and] unclear." Appellant's Br. 10. He claims, first, that one of the victims, M.M., gave contradictory testimony about creating a Facebook profile—specifically, that M.M. testified that she created the profile "when she was seven years old, before [the occurrence of any sexual abuse], then almost immediately contradict[ed] herself [by] [testifying] that she made the [profile] when [the sexual abuse] began." *Id.* Mattox, however, is mistaken. M.M.'s testimony is consistent in this respect. *See* Tr. of Proceedings 200:24-202:16 and 255:5-256:24.

**{¶ 26}** Second, Mattox observes that M.M. testified inconsistently about an incident involving both of them and B.T., another victim. On direct examination, M.M. testified that in the moments leading up to the incident, she did not know what was about to happen, but on cross-examination, she testified that she did know. *Id.* at 212:1-213:2 and 299:1-300:5.

{¶ 27} Although this testimony is inconsistent, the inconsistency relates only to a single incident and only to a fact of marginal significance. Taken as a whole, M.M.'s testimony is internally consistent, and B.T.'s testimony corroborates M.M.'s description of the sexual activity that occurred during the foregoing incident. *Id.* at 212:1-213:2, 299:1-306:4, 461:16-462:25, 467:9-469:12.

{¶ 28} Third, Mattox suggests that M.M. contradicted herself when she testified about one occasion when she ran away from home. *See id.* at 342:24-343:11. According to Mattox, the testimony is self-contradictory because M.M. "says that she ran away because of [him] and [because] she didn't feel safe," yet "later she admits that she felt safe with her parents." Appellant's Br. 10. Mattox mischaracterizes the testimony. M.M. actually testified that she felt safe from him with her parents but ran away because she could not bring herself to disclose to them, and she explained that she subsequently disclosed during a hospital visit because she felt safe disclosing in that environment. *See* Tr. of Proceedings 344:7-344:23.

{¶ 29} Fourth, Mattox notes that M.M. admitted at one point during her testimony that she had not responded accurately in answer to a previous question. Specifically, when asked on direct examination whether she had ever been touched inappropriately before the earliest incident with Mattox, M.M. answered in the negative, though on cross-examination, she acknowledged a prior incident involving another person. *Id.* at 360:17-361:14 and 369:23-371:18.

{¶ 30} Considering the circumstances, M.M.'s reluctance to acknowledge the prior incident is not necessarily a reflection on her reliability as a witness, and her willingness to admit that she answered a question inaccurately tends to bolster, rather than

undermine, the overall credibility of her testimony. Furthermore, given that the prior incident involved a person other than Mattox, it had no bearing on the accuracy of M.M.'s allegations against Mattox himself. M.M., for that matter, might have misinterpreted the question. *See id.* at 370:23-371:18.

{¶ 31} Fifth, Mattox maintains that the testimony of M.M. and the testimony of another victim, A.M., should be deemed unreliable on the basis of "inherent differences" in their respective accounts of an incident involving both of them and Mattox himself. Appellant's Br. 10. Mattox supports this assertion with citations to A.M.'s testimony and to his defense counsel's closing statement, but not to M.M.'s testimony, which appears to explain his inaccurate characterization of M.M.'s account of the incident. *See id.*

{¶ 32} In his brief, Mattox claims "M.M. testified that A.M. was in the living room [of Mattox's residence] listening to music" immediately before the incident, which occurred in Mattox's bedroom, whereas "A.M. testified that he had just gotten out of the shower." *See id.* M.M., however, testified that after the incident—not in the moments beforehand—she "just sat [on the] couch" in Mattox's living room "listening to music"; she did not refer to A.M. "listening to music" at any point in her testimony. *See* Tr. of Proceedings 217:12-217:22, 319:6-322:6 and 335:8-336:12.

{¶ 33} Mattox is nevertheless correct that A.M. and M.M. gave slightly different accounts. Describing the time leading up to the incident, A.M. testified that after stepping out of the shower, he went into Mattox's bedroom because "that's where [he] usually [got] dressed," and M.M. entered the room while he "was putting on [his] clothes." *Id.* at 394:18-395:12. M.M., on the other hand, testified that Mattox "had asked [her] and [A.M.] to go" into his bedroom. *Id.* at 217:12-217:22, 321:16-321:21. Yet, apart from this

comparatively trivial difference, A.M.'s testimony closely agrees with that of M.M. in nearly every other respect. *Compare id.* at 319:21-329:19, *with id.* at 395:11-397:6 and 404:5-409:11.

{¶ 34} Viewed as a whole, the record includes ample evidence that Mattox "engage[d] in sexual conduct" with B.T. and M.M. in violation of R.C. 2907.02(A)(1)(b); that Mattox "restrained the liberty" of A.M. and M.M. for the purpose of forcing them to "engage in sexual activity" in violation of R.C. 2905.01(A)(4); that Mattox had "sexual contact" with B.T. in violation of R.C. 2907.05(A)(4); and that Mattox asked M.M. to take naked photographs of herself and B.T. in violation of R.C. 2907.323(A)(1). *See, e.g.*, Tr. of Proceedings 212:1-213:2, 217:1-222:5, 231:8-233:25, 298:9-306:4, 315:2-317:18, 405:11-415:25, 461:16-462:25, 467:9-469:12, 470:18-478:8, 485:14-488:13, 545:25-554:6, 584:7-591:20, 726:23-729:1 and 732:9-735:24. Having reviewed the testimony of the three victims and the other evidence presented at Mattox's trial, we cannot conclude that the trial court clearly lost its way when it found Mattox guilty on Counts 1-4, 7-12 and 22 of Indictment A, and Counts 2-10 of Indictment B.

{¶ 35} Our finding that the guilty verdicts were thus not against the manifest weight of the evidence obviates the need for a separate analysis of the sufficiency of the evidence for purposes of Crim.R. 29(A). (Citation omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, ¶ 11; *State v. Miller*, 2d Dist. Montgomery No. 25504, 2013-Ohio-5621, ¶ 48, citing *McCrary*, 2011-Ohio-3161, ¶ 11. Mattox's second and third assignments of error are overruled.

### III. Conclusion

{¶ 36} The trial court properly overruled Mattox's motion to suppress because his

interviews at the Miami Township Police Department in 2013 and 2014 were non-custodial, and he validly waived his *Miranda* rights in advance of his interview in 2015. Additionally, the trial court properly overruled Mattox's motion for acquittal, and the evidence supported the court's verdicts of guilty on Counts 1-4, 7-12 and 22 of Indictment A, and Counts 2-10 of Indictment B. Therefore, Mattox's assignments of error are overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . . . .

WELBAUM, P.J. and DONOVAN, J., concur.

Copies mailed to:

Mathias H. Heck, Jr.
Alice B. Peters
Thomas M. Kollin
Hon. Dennis J. Langer