[Cite as *State v. Sturgell*, 2021-Ohio-2432.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28931 |
| | : | |
| v. | : | Trial Court Case No. 2020-CRB-1799 |
| | : | |
| JOSEPH STURGELL | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 16th day of July, 2021.

. . . . . . . . . . .

AMY B. MUSTO, Atty. Reg. No. 0071514, Assistant Prosecuting Attorney, City of Dayton Prosecutor's Office, 335 West Third Street, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

SAMANTHA L. BERKHOFER, Atty. Reg. No. 0087370, 202 North Limestone Street, Suite 250, Springfield, Ohio 45503
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Defendant-appellant, Joseph Sturgell, appeals from his conviction in the Dayton Municipal Court after the court found him guilty of one count of domestic violence and one count of assault.   In support of his appeal, Sturgell contends that his conviction for domestic violence was not supported by sufficient evidence.   For the reasons outlined below, Sturgell's judgment of conviction will be affirmed.

### Facts and Course of Proceedings

**{¶ 2}** On June 3, 2020, Sturgell was charged by complaint with one count of domestic violence in violation of R.C. 2919.25(A) and one count of assault in violation of R.C. 2903.13(A).   Both counts were charged as misdemeanors of the first degree.   The charges stemmed from allegations that on May 30, 2020, Sturgell severely beat his girlfriend under the Washington Street Bridge in Dayton, Ohio, while they were arguing about Sturgell's drug use.   Sturgell pled not guilty to the charges and the matter proceeded to a bench trial.

**{¶ 3}** Sturgell's girlfriend, the victim, was the only witness who testified at trial. The victim testified that at the time of the incident in question, she and Sturgell had been in a romantic relationship for one and a half years.   Although the victim and Sturgell were homeless, the victim testified that she and Sturgell "lived together every place that [they've] been."   Trans. (Sept. 8, 2020), p. 4-5.   The victim also testified that she and Sturgell had lived in a lot of different places together, including "Gordon, Ohio and then Indiana, and then here in Dayton."   *Id.* at 5.   The victim further testified that she and Sturgell helped take care of each other, provided for each other, and had a sexual relationship.

{¶ 4} Continuing, the victim testified that while living in Dayton, she had been residing in a homeless shelter whereas Sturgell had been residing under the Washington Street Bridge ("the bridge"). Even though she was at the homeless shelter, the victim testified that she spent every day with Sturgell at the bridge where she and Sturgell continued their domestic relationship. The victim testified that on May 30, 2020, she went to the bridge and spoke with Sturgell about him coming to live with her at the shelter. Sturgell, however, told the victim that "he was not going to come back in the shelters." *Id.* at 10. The victim testified that Sturgell "was choosing other things" such as "drugs and things like that" over living in the shelter. *Id.* at 9.

{¶ 5} As the victim and Sturgell were discussing this matter, the victim testified that she sprayed her perfume, which "just set [Sturgell] off." *Id.* at 10. The victim testified that in response to her spraying her perfume, Sturgell punched her on the left side of her head causing her to "hit the concrete, underneath." *Id.* at 11. The victim testified that Sturgell then continued to punch her in the face so hard that "he ripped [her] skin away from [her] dentures on the bottom" causing her to "[bleed] everywhere." *Id.* The victim also testified that she and Sturgell argued with each other for the next three hours while Sturgell continued to punch her, as well as kick and smack her.

{¶ 6} The victim testified that she eventually got away from Sturgell and went back to the homeless shelter. When the victim arrived at the shelter, the shelter called for medical assistance and contacted the police. The responding police officer took multiple photographs of the victim's injuries while the victim was being treated at the hospital. The photographs were identified by the victim at trial and admitted into evidence. *See* State's Exhibits 1(A) through 1(J). The photographs depict scratches, bruising, and

swelling on the victim's head, face, arms, and hands. The victim testified that she suffered traumatic brain injury and nerve damage as a result of Sturgell's beating her. The victim also testified that she was still in pain at the time of trial.

{¶ 7} Following the victim's testimony, the State rested its case. The defense then moved for an acquittal on the domestic violence charge under Crim.R. 29. The trial court overruled the Crim.R. 29 motion and ultimately found Sturgell guilty of both domestic violence and assault. After announcing its verdict, the trial court scheduled the matter for a sentencing hearing. At the sentencing hearing, the trial court ordered Sturgell to serve 180 days in jail with 10 days suspended and 30 days of credit for time served. For the remaining 140 days, the trial court ordered Sturgell to serve 90 days in jail and 50 days on house arrest via the electronic home detention program. The trial court also ordered Sturgell to serve one year of basic, supervised probation, as well as to undergo a drug and alcohol evaluation, to complete the Stop the Violence program, and to have no contact with the victim.

{¶ 8} Sturgell now appeals from his conviction, raising a single assignment of error for review.

**Assignment of Error**

{¶ 9} Under his sole assignment of error, Sturgell contends that his conviction for domestic violence was not supported by sufficient evidence because the State failed to present evidence establishing that the victim was a "family or household member" as defined under R.C. 2919.25. We disagree.

{¶ 10} "A sufficiency of the evidence analysis reviews whether, as a matter of law,

the evidence is adequate to support the fact finder's verdict." *State v. Cosby*, 2d Dist. Montgomery No. 28395, 2020-Ohio-510, ¶ 5, citing *State v. Mattox*, 2018-Ohio-992, 108 N.E.3d 1139, ¶ 23 (2d Dist.). "When reviewing a claim as to sufficiency of evidence, the relevant inquiry is whether any rational factfinder viewing the evidence in a light most favorable to the state could have found the essential elements of the crime proven beyond a reasonable doubt." (Citations omitted.) *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier-of-fact." (Citations omitted.) *Id.*

{¶ 11} Sturgell is challenging his conviction for domestic violence under R.C. 2919.25(A), which provides that: "No person shall knowingly cause or attempt to cause physical harm to a family or household member." A "family or household member" is defined, in relevant part, as "a spouse, a person living as a spouse, or a former spouse of the offender" who "is residing or has resided with the offender." R.C. 2919.25(F)(1)(a)(i). A "person living as a spouse" is defined as "a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." R.C. 2919.25(F)(2).

{¶ 12} Sturgell contends that the evidence presented at trial failed to establish that he and the victim "cohabited" during their relationship and that, because of this, the victim could not be considered a "person living as a spouse" for purposes of being a "family or household member" under R.C. 2919.25. On several occasions, however, this court has

indicated that "[t]he burden of establishing cohabitation is not substantial." *State v. Colter*, 2d Dist. Montgomery No. 17828, 2000 WL 282301, *2 (Mar. 17, 2000); *State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964, ¶ 73 (2d Dist.); *State v. White*, 2d Dist. Montgomery No. 25792, 2014-Ohio-1446, ¶ 14. We have explained that when "determining issues such as whether two persons had cohabited for purposes of R.C. 2919.25(F)(2), 'courts should be guided by common sense and by ordinary human experience.' " *Woullard* at ¶ 73, quoting *State v. Young*, 2d Dist. Montgomery No. 16985, 1998 WL 801498, *3 (Nov. 20, 1998).

{¶ 13} In *State v. Williams*, 79 Ohio St.3d 459, 683 N.E.2d 1126 (1997), the Supreme Court of Ohio held that:

> [T]he essential elements of "cohabitation" are (1) sharing of familial or financial responsibilities and (2) consortium. * * * Possible factors establishing shared familial or financial responsibilities might include provisions for shelter, food, clothing, utilities, and/or commingled assets. Factors that might establish consortium include mutual respect, fidelity, affection, society, cooperation, solace, comfort, aid of each other, friendship, and conjugal relations. These factors are unique to each case and how much weight, if any, to give to each of these factors must be decided on a case-by-case basis by the trier of fact.

*Id.* at 465.

{¶ 14} In *State v. Williams*, 2d Dist. Clark No. 99 CA 72, 2000 WL 1475585 (Oct. 6, 2000), we applied the foregoing analysis to a factual scenario that is similar to the case at bar. In doing so, we found that there was sufficient evidence of cohabitation and

affirmed the appellant's domestic violence conviction. *Id.* at *3-4. In so holding, we stated the following:

> During the course of their six or seven week relationship, Williams and Shortridge did not maintain a "traditional" lifestyle, and thus there were few of the "traditional" indicia of married life or cohabitation. For example, neither Williams nor Shortridge was employed, had a house or apartment, or owned a car. They borrowed cars and moved from place to place according to their whims and which family member or friend would take them. Because they had no financial responsibilities, there was none of the usual evidence of shared financial responsibilities, such as paying rent or a mortgage together or on one another's behalf. This is not to say, however, that there was no evidence of cohabitation. Williams had a place to live when he met Shortridge and invited her to join him in living there. Although the unit in question actually belonged to Williams' other girlfriend, he provided housing for Shortridge when he asked her to live there with him, and she did so for one month. For her part, Shortridge provided transportation for the couple by borrowing family members' cars, and she testified that her grandmother had given her some money during that period, which she had used to buy food for herself and for Williams. Guided by common sense and ordinary human experience, the average person could have concluded from this evidence that Williams and Shortridge had shared their familial and financial responsibilities, insofar as they had any, and that Shortridge was a person living as Williams' spouse for purposes of a

domestic violence conviction.

(Citation omitted) *Williams*, 2d Dist. Clark No. 99 CA 72, 2000 WL 1475585 at *4.

{¶ 15} The instant case is like *Williams* in that the victim and Sturgell did not have a traditional lifestyle due to being homeless and therefore exhibited few of the traditional indicia of married life or cohabitation. While there was no specific evidence of shared financial responsibilities, the victim nevertheless testified that during their one-and-a-half year romantic/sexual relationship, she and Sturgell took care of one another and provided for one another. The victim also testified that she and Sturgell "lived together every place that [they've] been," including Gordon, Ohio; Indiana; and Dayton. Trans. (Sept. 8, 2020), p. 4-5. Although the victim testified that Sturgell chose to live under a bridge in Dayton while she stayed at a homeless shelter, the victim's testimony indicated that she spent every day at the bridge with Sturgell where they continued their domestic relationship. Furthermore, the victim testified that as of May 29, 2020, Sturgell "was able to *come back* into the shelter to live with her," which indicates that Sturgell had lived with the victim at the shelter at some point in time during their relationship. (Emphasis added.) *Id.* at 9.

{¶ 16} When viewing the victim's testimony in a light most favorable to the State, a rational factfinder could conclude that the victim and Sturgell cohabited. This is because the victim's testimony established that she and Sturgell lived and moved together, spent every day together, took care of one another, and provided for one another. When guided by common sense and ordinary human experience, these facts, combined with the couple's ongoing sexual relationship, could lead a rational factfinder to conclude that the victim was "a person living as spouse" as that phrase is defined under

R.C. 2919.25(F)(2). Therefore, even under these non-traditional facts and circumstances, we find the State presented sufficient evidence establishing the family-or-household-member element of the domestic violence charge.

{¶ 17} For the foregoing reasons, Sturgell's sole assignment of error lacks merit and is overruled.

## Conclusion

{¶ 18} Having overruled Sturgell's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Amy B. Musto
Samantha L. Berkhofer
Hon. Mia Wortham Spells