[Cite as *State v. Smith*, 2014-Ohio-4300.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-P-0083** |
| JUSTIN M. SMITH, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Portage County Court of Common Pleas.
Case No. 2013 CR 0379.

Judgment: Affirmed.

*Victor V. Vigluicci*, Portage County Prosecutor, and *Kristina Drnjevich*, Assistant Prosecutor, 241 South Chestnut Street, Ravenna, OH 44266 (For Plaintiff-Appellee).

*Gregory A. Price*, 137 South Main, Suite 300, Akron, OH 44308 (For Defendant-Appellant).


TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Justin M. Smith, appeals the judgment of the Portage County Court of Common Pleas convicting him of aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(3). For the reasons that follow, we affirm.

{¶2} On June 20, 2013, a Portage County Grand Jury returned a joint indictment against appellant and Shawn D. Cook alleging one count of aggravated robbery. Appellant pled not guilty.

{¶3} On August 27, 2013, a jury trial commenced. The trial lasted two days. Cook, who had already pled guilty to aggravated robbery for his involvement in the event, testified as a witness for appellee, the state of Ohio. Cook hoped that his testimony against appellant would reflect favorably upon him at his own sentencing.

{¶4} At trial, Cook testified that on multiple occasions over the course of a couple weeks, he and appellant discussed robbing Kent Jewelry. Cook had been in the shop a few months earlier and thought "the security seemed to be fairly low, and that it was a place that was, potentially, a place that could be robbed with relative ease." Cook stated that appellant wanted to be involved with the robbery. Cook further testified that "[w]e got gloves. You know, we prepared with jackets, that sort of thing. We decided, you know, this was - - this was what we were going to wear, this is what we were going to do."

{¶5} The testimony at trial indicated that upon arriving in Kent, appellant met up with Cook at the home of Cook's girlfriend. Appellant had known Cook from when they worked together at a restaurant in Cuyahoga Falls. Appellant and Cook proceeded to smoke heroin. Appellant guessed that he smoked about two "tin foils" worth, but he did not know how much that was because his "drug of choice [was] crack cocaine." In addition to smoking heroin with appellant, Cook testified that he and appellant also "had, like, one or two mild alcohol beverages. It was like a tea mix kind of thing."

{¶6} Appellant and Cook then walked to downtown Kent, where the two strolled about. Both appellant and Cook wore jackets, despite it being June, and each carried with them a pair of gloves. Cook also carried a roll of duct tape and a stun gun in his jacket pocket. According to Cook, the plan was to "see if the stun gun would subdue

2

[the owner] temporarily, long enough that we could break into the jewelry cases and steal jewelry." Cook said the duct tape was "if, for whatever reason, things got out of hand."

**{¶7}** The evidence established that at 4:48 p.m. on June 14, 2013, appellant and Cook entered Kent Jewelry, located on South Water Street in Kent, Ohio. Dennis Andrei, who has owned and operated Kent Jewelry for the past 17 years, was working behind the counter that day. After allegedly witnessing appellant attempt to open a locked jewelry case, Mr. Andrei placed the security system's silent emergency alarm button in his pocket before offering his assistance to appellant and Cook. Appellant and Cook continued to peruse the shop for the next 11 minutes. During this time, Mr. Andrei assisted Cook, who claimed to be shopping for an engagement ring. Next, Cook asked Mr. Andrei to show him some gold bracelets in a jewelry case on the opposite side of the shop. Before moving to the other jewelry case, Mr. Andrei locked the case that contained the engagement rings.

**{¶8}** Upon stepping out from behind the case, Cook lunged at Mr. Andrei from behind with the stun gun that had been concealed in his jacket pocket. Mr. Andrei testified to seeing "the lightning bolts and the prongs coming" at his neck. Cook struck Mr. Andrei in the neck with the stun gun; however, Mr. Andrei fought back. The altercation continued, and the apron Mr. Andrei was wearing was ripped off. A jewelry cabinet was also knocked over as Mr. Andrei and Cook wrestled.

**{¶9}** The video surveillance footage shows that during the course of the altercation between Mr. Andrei and Cook, appellant approached Mr. Andrei and shoved him. The video also shows appellant attempting to open the jewelry cabinet containing

3

the engagement rings that Mr. Andrei had shown to Cook only minutes earlier. After discovering the cabinet was locked, appellant ran from the shop. Cook and Mr. Andrei wrestled toward the door. The physical altercation, from the moment Cook discharged the stun gun until the time appellant and Cook left the shop, lasted a little over 20 seconds. Police were then alerted and were quickly dispatched to the scene.

{¶10} Appellant and Cook ran from the jewelry store until they reached St. Patrick Church. At the church, appellant and Cook discarded their jackets and hats in a dumpster before resuming their flight away from the jewelry shop. Officer Joe Hadaway, a police officer with the city of Kent, saw the two shirtless males running northbound on Craine Avenue, approximately one-half mile away from the jewelry shop. Officer Hadaway called out for appellant and Cook to stop running. Appellant complied with Officer Hadaway's request and was apprehended. As he was being apprehended, appellant told Officer Hadaway that "[i]t was all that guy," pointing in the direction of the fleeing Cook. Cook was not apprehended at the scene. Appellant then assisted police in identifying, locating, and apprehending Cook.

{¶11} As a result of the incident, Mr. Andrei suffered numerous injuries. These injuries included scrapes to his knees, calves, and elbows, as well as a one-centimeter, bloody burn mark on his neck that resulted from the discharge of Cook's stun gun. Mr. Andrei declined any medical assistance for his injuries.

{¶12} Cook testified that once he attacked Mr. Andrei with the stun gun, "Andrei started kicking my ass. Immediately. I mean, good for him. He defended himself like a knight, and I was subdued immediately."

4

{¶13} On cross-examination, Cook was asked about the plan he and appellant concocted. Cook stated, "[w]e didn't have any concrete plan. That was - - You know, I mean, it was a discussion we made. It wasn't like we're a couple of professional criminals. We're more professional drug addicts." When asked to elaborate by appellant's counsel, Cook testified: "The plan was to go in, hit the guy with the taser, [appellant] would jump on him, as well, and we would subdue him and take things from the store and flee as quickly as possible. Like I said, we didn't have some - - it was a harebrained scheme, to put it lightly." When asked who was behind the plan, Cook stated, "I don't think I - - either one of us can claim to have any real thick brains in this particular situation."

{¶14} In addition to the testimony from Cook, the jury considered the testimony of Mr. Andrei, several officers and detectives from the city of Kent police department, and appellant. The jury also considered surveillance footage obtained from four different cameras located within Kent Jewelry.

{¶15} Appellant, testifying in his defense, stated that on June 14, 2013, he paid his neighbor $20 to drive him from Akron, where he owned a home, to Kent, where his brother lived. Appellant testified he traveled to Kent because he was on a multi-day crack binge and wanted to escape "from the negativity" that permeated Akron. Appellant had not slept or eaten in the three days since beginning his crack binge; the binge also resulted in appellant "going broke." Appellant contended that the robbery was organized and carried out by Cook and that he had no involvement.

{¶16} At the conclusion of the trial, appellant was found guilty of aggravated robbery.

5

{¶17} On September 13, 2013, appellant was sentenced by the Portage County Court of Common Pleas to a prison term of nine years. Appellant was also informed that, upon his release from prison, he would be placed on post-release control for five years.

{¶18} Appellant timely appealed. On appeal, appellant sets forth three assignments of error. For sake of clarity, we address appellant's assignments of error out of order.

{¶19} In his third assignment of error, appellant argues:

{¶20} "The trial court erred to Mr. Smith's prejudice when it improperly instructed the jury on complicity, when Mr. Smith was never charged with complicity."

{¶21} We generally review jury instructions under an abuse of discretion standard. *State v. Chinn*, 85 Ohio St.3d 548, 574-575 (1999). However, because appellant did not object to the jury instructions at trial, appellant has waived all but plain error on review. *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶52. "Plain error exists where the substantial rights of the accused are so adversely affected as to undermine the fairness of the guilt determining process." *State v. Noling*, 11th Dist. Portage No. 96-P-0126, 1999 Ohio App. LEXIS 3095, *40, citing *State v. Swanson*, 16 Ohio App.3d 375, 377 (1984).

{¶22} It is well established that jury instructions must be reviewed as a whole. *State v. Burchfield*, 66 Ohio St.3d 261, 262 (1993); *State v. Bates*, 11th Dist. Portage No. 99-P-0100, 2001 Ohio App. LEXIS 1561, *14 (Mar. 30, 2001). Additionally, a trial court must give jury instructions that provide a correct, clear, and complete statement of

6

the law.  *See Sharp v. Norfolk & W. Ry. Co.*, 72 Ohio St.3d 307, 312 (1995), citing *Marshall v. Gibson*, 19 Ohio St.3d 10, 12 (1985).

**{¶23}** On appeal, appellant argues that the instruction regarding the crime of complicity was improper, as the grand jury indictment made no mention of complicity. Appellant's claim is meritless.  R.C. 2923.03(F) states, "[a] charge of complicity may be stated in terms of this section, or *in terms of the principal offense.*"  (Emphasis added.) "This provision places defendants on notice that the jury may be given a complicity instruction even though the defendant has been charged as a principal offender."  *State v. Keenan*, 81 Ohio St.3d 133, 151 (1998), citing *Hill v. Perini*, 788 F.2d 406, 407-408 (6th Cir.1986).  Indeed, this has been the practice in Ohio for well over 100 years.  *See Hanoff v. State*, 37 Ohio St. 178, 183-184 (1881).

**{¶24}** A jury instruction regarding complicity is only proper when sufficient evidence exists in the record to establish complicity.  *See State v. Woods*, 48 Ohio App.3d 1, 6-7 (1st Dist.1988).  R.C. 2923.03, which governs complicity, provides:  "(A) No person, acting with the kind of culpability required for the commission of an offense, shall do any of the following: * * * (2) Aid or abet another in committing the offense; (3) Conspire with another to commit the offense in violation of section 2923.01 of the Revised Code * * *."

**{¶25}** Here, there was more than ample evidence to support a jury instruction for complicity, including testimony from Cook that he and appellant worked together to plan and coordinate a robbery at Kent Jewelry.  Cook's testimony was supported by video evidence from the shop's surveillance system which showed appellant shoving Mr.

Andrei and attempting to open a locked jewelry case after Cook discharged his stun gun on Mr. Andrei.

{¶26} Moreover, Crim.R. 33(E)(2) provides that a variance between the allegations and the evidence at trial is not reversible error unless the defense is prejudiced or misled thereby. On the record before us, we cannot conclude that the state's failure to allege complicity in the grand jury indictment prejudiced or misled appellant in any way. Appellant was jointly indicted along with Cook; therefore, appellant knew from the moment he was indicted that complicity was at issue.

{¶27} Appellant's merit brief argues that "if [appellant] had known that he was charged with complicity, he would have 'never [taken] this to trial.'" Appellant's counsel misrepresents appellant's actual statement at sentencing. At sentencing, appellant apologized to Mr. Andrei because appellant could not "imagine the terror that Mr. Andrei must have felt." Appellant continued his apology by stating: "I want to apologize to you and the courts for - - if I did understand and knew the law like I thought I did, I would have never taken this to trial. I've wasted your time, and I do apologize." Appellant's counsel's assertion that "if [appellant] had known that he was charged with complicity, he would have 'never [taken] this to trial'" takes appellant's statements far from the context in which they were spoken. Accordingly, appellant does not indicate how he would have defended himself any differently had the indictment specifically alleged complicity.

{¶28} As there was more than sufficient evidence adduced at trial to support an instruction on complicity, appellant's third assignment of error is without merit.

{¶29} We next address appellant's first assignment of error:

8

**{¶30}** "The state's evidence was insufficient to convict Mr. Smith of aggravated robbery."

**{¶31}** "When measuring the sufficiency of the evidence, a reviewing court must consider whether the state set forth adequate evidence to sustain the jury's verdict as a matter of law." *Kent v. Kinsey*, 11th Dist. Portage No. 2003-P-0056, 2004-Ohio-4699, ¶11, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). A verdict is supported by sufficient evidence when, after viewing the evidence most strongly in favor of the prosecution, there is substantial evidence upon which a jury could reasonably conclude that the state proved all elements of the offense beyond a reasonable doubt. *State v. Schaffer*, 127 Ohio App.3d 501, 503 (11th Dist.1998), citing *State v. Schlee*, 11th Dist. Lake No. 93-L-082, 1994 Ohio App. LEXIS 5862, *14-15 (Dec. 23, 1994).

**{¶32}** To support appellant's conviction, there must be substantial evidence that proves appellant, "in attempting or committing a theft offense, * * * inflict[ed], or attempt[ed] to inflict, serious physical harm on another." R.C. 2911.01(A)(3).

**{¶33}** There is sufficient evidence contained in the record to find that appellant attempted to commit a theft offense. A theft offense occurs when an individual, acting with the purpose to deprive the owner of his or her property, obtains or exerts control over that property. R.C. 2913.02. In this case, video surveillance shows appellant attempting to open the jewelry case containing engagement rings just after Cook attacked Mr. Andrei with the stun gun. Appellant fled upon realizing that the case was locked. Additionally, Cook testified about the plan to rob Kent Jewelry formulated by himself and appellant. Specifically, Cook testified that he told appellant "the security [at Kent Jewelry] seemed to be fairly low, and that it was a place that was, potentially, a

9

place that could be robbed with relative ease." Cook further stated that appellant expressed his desire to be involved with the robbery. Appellant and Cook formulated a plan by which the pair would "see if the stun gun would subdue [Mr. Andrei] temporarily, long enough that we could break into the jewelry cases and steal jewelry." Appellant also discarded his jacket and gloves in a dumpster immediately following the incident. Therefore, the record contains more than sufficient evidence to show that appellant attempted to commit a theft offense.

{¶34} Appellant also attempted to inflict serious physical harm on Mr. Andrei in the course of the robbery. Appellant argues that the state failed to prove that he attempted to inflict serious physical harm and that no serious physical harm resulted from the incident. At trial, Mr. Andrei testified that he did not receive any medical treatment as a result of the robbery and that he took care of his injuries by "you know, clean[ing] up afterwards, and that's it." Despite appellant's contention that there was insufficient evidence of an attempt to inflict serious physical harm, the surveillance footage clearly establishes sufficient evidence from which a jury could conclude that appellant and Cook attempted to cause serious physical harm. Serious physical harm to persons is statutorily defined in R.C. 2901.01(5) as any of the following:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

10

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

**{¶35}** Although temporary in nature, the use of a stun gun can cause substantial physical pain. Indeed, the reason appellant and Cook used a stun gun was to disable Mr. Andrei and potentially restrain him, using duct tape, while they stole the shop's inventory. We note that many courts, as well as legislatures, have deemed it appropriate to characterize stun guns as dangerous or deadly weapons, possible of inflicting substantial physical injury. *See, e.g.*, *United States v. Wallace*, 800 F.2d 1509, 1513 (9th Cir.1986) (finding a stun gun to be a "dangerous weapon" for purposes of a federal airline violation, where "dangerous weapon" was defined as a weapon "likely to produce death or great bodily harm"); *State v. Evans*, 247 Mont. 218, 225, 806 P.2d 512 (1991), *overruled on other grounds*, 343 Mont. 494, 188 P.3d 978 (2008) (concluding the jury properly found a stun gun to be a weapon, where weapon was statutorily defined to be "any instrument, article, or substance which, regardless of its primary function, is readily capable of being used to produce death or serious bodily injury"); *People v. MacCary*, 173 A.D.2d 646, 570 N.Y.S.2d 322, 323 (1991) (concluding that the prosecution adduced sufficient evidence upon which a jury could reasonably conclude that a stun gun is a dangerous instrument, where "dangerous instrument" was statutorily defined as "any instrument * * * which, under the circumstances in which it is used * * * is readily capable of causing death or other serious physical injury").

**{¶36}** The facts adduced at trial show that after spending around ten minutes walking throughout the jewelry store, Cook lunged at Mr. Andrei with a stun gun with the goal of subduing and incapacitating him. Cook carried duct tape in case the pair

11

decided that Mr. Andrei needed to be further restrained. After Cook "stunned" Mr. Andrei, appellant ran over to assist Cook by trying to shove Mr. Andrei to the ground, in furtherance of their plan to deprive Mr. Andrei of his merchandise. The violent nature of the attack, as captured on Mr. Andrei's surveillance system, is sufficient evidence for a jury to conclude that the state proved attempted serious physical harm beyond a reasonable doubt. The attack left Mr. Andrei with scrapes to his knees, calves, and elbows, as well as a one-centimeter, bloody burn mark on his neck that resulted from the discharge of Cook's stun gun. Had Mr. Andrei not "defended himself like a knight" and had the stun gun not been knocked away, Mr. Andrei's injuries would likely have increased significantly. Accordingly, there was sufficient evidence from which a jury could conclude that appellant and Cook attempted to commit serious physical harm. As there was sufficient evidence to each element of aggravated robbery, appellant's conviction is not against the sufficiency of the evidence.

{¶37} Accordingly, appellant's first assignment of error is without merit.

{¶38} In his second assignment of error, appellant argues:

{¶39} "The accused's conviction for aggravated robbery is against the manifest weight of the evidence."

{¶40} To determine whether a verdict is against the manifest weight of the evidence, a reviewing court must consider the weight of the evidence, including the credibility of the witnesses and all reasonable inferences, to determine whether the trier of fact "lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983).

12

In weighing the evidence submitted at a criminal trial, an appellate court must defer to the factual findings of the trier of fact regarding the weight to be given the evidence and credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. Further, no conviction resulting from a trial by jury shall be reversed on the weight of the evidence except by the concurrence of all three judges hearing the appeal. *Thompkins* at 386.

**{¶41}** Appellant maintains that the verdict is against the weight of the evidence because "the state failed to positively link [appellant] to any illegal behavior." Appellant argues that the only evidence presented by appellee was Cook's testimony. According to appellant, Cook was solely responsible for orchestrating and carrying out the robbery. We disagree.

**{¶42}** We are mindful that the jury, as the trier of fact, is entitled to believe all, part, or none of a witness's testimony. *State v. Williams*, 11th Dist. Lake No. 2012-L-078, 2013-Ohio-2040, ¶21. Under his manifest weight argument, appellant asserts that his own testimony was more credible than that offered by appellee. However, it is clear that the jury thought appellee's multiple witnesses, including Cook, were more credible than appellant's own testimony in which he denied all involvement.

**{¶43}** Furthermore, the jury was presented additional evidence, beyond Cook's testimony, which supports appellant's conviction. Most damaging to appellant's own version of the events is the video from the shop's surveillance system that shows appellant attempting to open the jewelry case and shoving Mr. Andrei before fleeing. The jury heard testimony that appellant was wearing a coat and carrying gloves when he entered the shop. The jury also heard testimony about appellant's possible motive in

13

participating in the robbery: his three day crack binge and "going broke." Accordingly, we cannot conclude the jury lost its way in returning a verdict of guilty. Appellant's denial of involvement is refuted by substantial evidence put forth by appellee. For these reasons, we hold the jury's verdict was not against the manifest weight of the evidence.

{¶44} Appellant's second assignment of error is without merit.

{¶45} For the foregoing reasons, appellant's three assignments of error are not well taken, and the judgment of the Portage County Court of Common Pleas is affirmed.

THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in judgment only.