**[Cite as *State v. Klofta*, 2020-Ohio-5032.]**

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28690 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-3269 |
| | : | |
| HOLLY L. KLOFTA | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of October, 2020.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by LISA M. LIGHT, Atty. Reg. No. 0097348, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45422
    Attorney for Plaintiff-Appellee

JOHN A. FISCHER, Atty. Reg. No. 0068346, 70 Birch Alley, Suite 240, Dayton, Ohio 45440
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1}  Holly L. Klofta appeals from her conviction, following a jury trial, on one count of endangering children, in violation of R.C. 2921.22(A), a felony of the fourth degree due to a prior conviction. The court imposed a sentence of 18 months.  We hereby affirm the judgment of the trial court.

{¶ 2} Klofta was indicted on July 18, 2019, and she pled not guilty. On September 11, 2019, she filed a motion to suppress statements made to the police, which the court overruled after a hearing.   Trial commenced on November 4, 2019.

{¶ 3} At trial, the victim, E.S., then age 10, testified that she used to live with Klofta and "Mike," her "dad."   She recounted an incident at their home where in which Klofta "tased" E.S. in the living room.   E.S. testified that, earlier in the day, she and a friend had been loud in the car while Klofta was on the phone; as a result, Klofta made E.S. perform a "lean and rest" as a form of punishment when they arrived home.   According to E.S., a "lean and rest" meant that she got "into a push-up position" and had to stay there until her "arms hurt."   E.S. stated that Klofta had said, "stop crying and I won't tase you." Nonetheless, Klofta tased E.S. on her "butt." E.S. testified that "[i]t hurt" and felt "like a hornet's sting" for "a few minutes."   E.S. stated that the Taser left marks on her skin, and she identified photos of her injury.   E.S. also identified a photograph of the Taser and stated that Klofta sometimes kept it in her bra.   E.S. testified that Klofta had never used the Taser on her before, but that she had previously shown it to her and turned it in on in her presence.

{¶ 4} On cross-examination, E.S. testified that Klofta took care of four other children in her home who did not reside there; three of them were younger than E.S., and one was older.   She stated that Klofta used spanking and sitting in the corner as

punishments. E.S. also stated that she had been made to perform the "lean and rest" two or three other times prior to the tasing incident. In the course of the latest "lean and rest," E.S. testified that she "didn't want to get tased, so I tried to stop crying. But then I kept on crying because I couldn't stop." She testified that she had been stung by a wasp when she was in kindergarten, and the Taser felt "just like that." E.S. acknowledged that she did not actually see Klofta touch her with the Taser. E.S. testified that the Taser was the size of a "full-size Hershey bar" and pink, it made "like a firecracker sound" when it was turned on, and it made her "jump a little." According to E.S., the "tasement (sic) was punishment because I was just like, begging her to let me rest, and then I couldn't stop crying."

{¶ 5} E.S. testified that she did not tell Mike that she had been tased because she "thought he already knew." When asked if Klofta or Mike ever came to her and asked how she felt or if she was suffering any pain after being tased, E.S. responded, "No." E.S. testified that she remained in Klofta's home for about seven days before she saw her mother at her mother's home in Lewisburg; E.S. told her mother about the tasing the next morning after she got home. E.S. stated that her mother took her to the police station, and an officer photographed the injury.

{¶ 6} E.S.'s mother ("Mother") testified that she used to be married to Mike, and that after they divorced, Mike married Klofta. Mother testified that Mike was not E.S.'s biological father, but that he raised her as his own child. She stated that E.S. went to live with Mike and Klofta because she was having "some educational issues at our home school in Lewisburg." Mother testified that, in August 2018, E.S. came home and reported something that resulted in Mother contacting the police. Mother testified that

she had photographed marks on E.S.'s "left butt cheek," and she identified the photos that she had taken.

{¶ 7} On cross-examination, when asked why she initially contacted law enforcement and not the hospital upon learning of E.S.'s injury, Mother explained that "the marks were there," but E.S. was not complaining of being in pain, and Mother did not think she needed medical attention. Mother testified that she took the photos of the injury on August 14, 2018.

{¶ 8} Detective Elizabeth Alley testified that she was employed in the special victims unit of the Dayton Police Department, and that she was stationed at Care House, having been assigned there for seven years and employed by the department for 13 years. Alley testified that she investigated physical and sexual abuse against children, and she was assigned to investigate Mother's complaint about E.S. Alley spoke to Mother and E.S., and she observed the injury on E.S.'s "lower left butt cheek." Alley testified that she was present when an evidence crew photographed the injury, and she identified the photos, which include her hand holding a ruler.

{¶ 9} Alley testified that she and another detective subsequently met with Klofta at her home. She testified that Klofta gave them consent to search the home, which allowed them to take photographs and to collect any evidence that was relevant to the case. Alley testified that the Taser was found in a kitchen cabinet, and she identified a photo of it on the cabinet shelf.

{¶ 10} Alley testified that Klofta was transported to the Safety Building and was read her rights; Klofta agreed to speak to Alley and another detective. During the interview, Klofta corroborated that E.S. got into to trouble and was made to perform a

"lean and rest," but she did not admit that she tased E.S. Alley testified that Klofta said that E.S. "was crying out of control. She was not able to contain or control her anger at that time or her crying at that time." Klofta told Alley that she bought the Taser at a flea market; she also "corroborated" that she kept the Taser in her bra sometimes or in the kitchen cabinet. Alley testified that Klofta told her that E.S. sometimes had "a problem with lying." Alley also testified that Klofta had a prior conviction for child endangering "out of [the] Xenia Police Department" in 2003. Alley identified a certified judgment entry of conviction for that conviction.

{¶ 11} Alley explained the difference between a stun gun and a Taser, and she indicated that Klofta's device was actually a stun gun. She testified that she was present when the stun gun was tested on Detective Joshua Spears' bicep, over his shirt, and she identified photos of Spear's bicep after the gun was employed, with a ruler next to the marks it left. On cross-examination, Alley testified that "it was kind of scary" when Spears was tased; when asked about his reaction, she replied, "Shocked. Scared."

{¶ 12} On redirect examination, Alley testified that the purpose of using the stun gun on Spears was to determine the distance between the probes when someone was actually stunned with it. She further testified that the distance between the probes as evidenced on Det. Spears' arm was consistent with the distance between the marks on E.S.'s "bottom."

{¶ 13} At the conclusion of the evidence, Klofta moved for a judgment of acquittal, asserting that the State had failed to prove beyond a reasonable doubt that Klofta had "failed to do something that she [was] supposed to do as the caretaker or custodian of the child." Counsel directed the court's attention to *State v. Kamel,* 12 Ohio St.3d 306,

466 N.E.2d 860 (1984), which discussed acts of omission versus acts of commission, and argued that "there was nothing that [Klofta] was accused of not doing that contributed to * * * a substantial risk to the child's health or safety. The healing process of the marks on the child happened naturally."

{¶ 14} In overruling the motion for a judgment of acquittal, the trial court relied on *State v. Gaver*, 5th Dist. Stark No. 2015CA00204, 2016-Ohio-7055, which discusses R.C. 2919.22(A) and (B). R.C. 2919.22(A) prohibits "creat[ing] a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support * * *," and R.C. 2919.22(B) prohibits, among other things, "abus[ing]" a child or "[a]dminister[ing] corporal punishment or other physical disciplinary measure * * * which punishment * * * is excessive under the circumstances and creates a substantial risk of serious physical harm to the child." The trial court agreed with defense counsel that subsection (A) deals with an act of omission, but also indicated that subsections (A) and (B) are "not mutually exclusive," and that an omission could be the failure to protect a child from one's own actions. The court concluded that *Gaver* was "very similar" to this case, although it did not involve a Taser, because the defendant was found to have failed to protect the child from her own abuse. The court characterized the State's theory of the case as being that Klofta "failed to protect the child from being tased."

{¶ 15} The jury found Klofta guilty of child endangering, as discussed above.

{¶ 16} Klofta asserts two assignments of error on appeal, which we will consider together:

> THE TRIAL COURT ERRED BY DENYING MS. KLOFTA'S RULE 29 MOTION FOR ACQUITTAL.

THE JURY VERDICT WAS AGAINST THE MANIFEST WEIGHT OF

THE EVIDENCE.

{¶ 17} In her first assignment of error, Klofta asserts that the jury improperly convicted her because there was no evidence that she violated a duty of care, protection, or support that created a substantial risk to the health or safety of E.S. Klofta asserts that the State charged her under R.C. 2919.22(A), but it presented evidence attempting to show that she disciplined the child excessively as prohibited by R.C. 2919.22(B)(3). Klofta asserts that the "trial court erred when it permitted the jury to consider the case" under a theory that was different from "the crime for which she was indicted," and that the State "cannot now correct its failure to indict [her] under the proper section of the criminal code."

{¶ 18} Klofta further argues that the evidence was insufficient to show that she committed a crime of omission pursuant to R.C. 2919.22(A). According to Klofta, evidence "tending to prove a violation of Section 2919.22(B) cannot constitute evidence of a violation of Section 2919.22(A)"; she relies on *Kamel,* 12 Ohio St.3d 306, 466 N.E.2d 860, as she did in the trial court. She argues that "an act of omission – like failing to seek medical attention" -- falls under R.C. 2919.22(A), whereas "[a]ffirmative acts (acts of commission) – like the excessive disciplinary measures" she was alleged to have committed, fall under R.C. 2919.22(B).

{¶ 19} Klofta further asserts that *Cleveland v. Calhoun*, 8th Dist. Cuyahoga No. 105521, 2018-Ohio-1758, which discusses distinctions between the subsections of the child endangering statute, "is dispositive of this case." Klofta also argues that she "did not neglect any duty that she owed to the child." Klofta asserts that, if this Court "accepts

the trial court's reasoning that affirmative acts of excessive discipline are cognizable under Section 2919.22(A), then an indictment under Section 2919.22(B) would never be necessary and Section (B) becomes superfluous."

{¶ 20} In her second assignment of error, Klofta asserts that the jury clearly lost its way in finding that [she] committed a violation of R.C. 2919.22(A). She points out that E.S. testified that the level of pain from the tasing "was merely that of a wasp sting," that it lasted "only a few minutes," and that E.S. "resumed her normal, everyday life" with Klofta afterward. Klofta argues that, "by permitting the charge to proceed under Section 2919.22(A) instead of Section 2919.22(B)(3), the trial court denied Ms. Klofta her due process rights * * * because it denied her the opportunity to even inquire into the excessiveness of the discipline." Accordingly, Klofta asserts, "trial counsel was forced to defend against the Section 2919.22(A) charge with the only defense available to her – by claiming that Ms. Klofta was not the person who committed the act – a ridiculous assertion given the facts of the case."

{¶ 21} The State responds that Klofta "failed to protect E.S. from her own abuse" and further violated her duty of care to E.S. because she never inquired about E.S.'s condition or pain after tasing her. According to the State, it presented sufficient evidence that Klofta recklessly created a substantial risk of harm to E.S.'s health or safety by tasing her and violated the duty of care or protection she owed to E.S. The State asserts that, at trial, its position was that Klofta failed to protect E.S. from Klofta's own abuse, which constituted an act of omission under R.C. 2912.22(A). Finally, the State asserts that Klofta's due process argument is not properly before this Court because it was not raised in the trial court.

{¶ 22} In reply, Klofta asserts that the State "concedes that this is an excessive punishment case," and that *Calhoun,* 8th Dist. Cuyahoga No. 105521, 2018-Ohio-1758, remains dispositive.

{¶ 23} Klofta further argues that *Gaver,* 5th Dist. Stark No. 2015CA00204, 2016-Ohio-7055, "does not stand for the proposition that affirmative acts of abuse are cognizable" under R.C. 2919.22(A). She argues that, if the State's and the trial court's views are accepted, "then *Gaver* stands for the proposition that a defendant may be convicted under Section 2919.22(A) for his affirmative acts of abuse while at the same time be acquitted under Section 2912(B) for his acts of abuse," an outcome that she characterizes as "internally inconsistent and irrational." Klofta argues that R.C. 2919.22(A) "does not apply when a defendant stands accused of committing the act of abuse herself; rather, it applies only when it is unknown who committed the act of abuse; in which case Section 2919.22(A) permits a defendant to be convicted for failing to protect the child from that abuse – [by] whoever * * * inflicted it – which is the classic case of a neglect of a duty to protect the child." Conversely, according to Klofta, "when all the evidence goes to the fact that the defendant herself committed the act of abuse, then only Section 2919.22(B) can apply - the section that prohibits an affirmative act of abuse against a child."

{¶ 24} Klofta argues that, in this case, there "can be no serious argument (and no jury could find)" that someone other than Klofta inflicted the injury and Klofta failed to protect the child from that person. Klofta asserts that this Court should not allow her "to be convicted under Section 2919.22(A) for her affirmative act of discipline." Klofta also directs our attention to *State v. Sammons,* 58 Ohio St.2d 460, 391 N.E.2d 713 (1979),

which held that an affirmative act of abuse is an element of R.C. 2919.22(B).

{¶ 25} As this Court has previously noted:

An appellate court reviews a trial court's ruling on a motion under Crim.R. 29 by the same standard applicable to a claim based on the sufficiency of the evidence. *State v. Scott*, 2018-Ohio-198, 104 N.E.3d 143, ¶ 37 (2d Dist.), citing *State v. Bailey*, 2d Dist. Montgomery No. 27177, 2017-Ohio-2679, ¶ 17. Sufficiency of the evidence "is the legal standard applied to determine whether * * * the evidence [in a given case] is [adequate] as a matter of law to support the jury['s] verdict." *State v. Smith,* 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997), citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). On review of a challenge to a conviction based upon the sufficiency of the evidence, the " 'relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *Id.*, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

In a challenge based on the weight of the evidence, an appellate court must review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the jury clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541, citing *State v. Martin*, 20

Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983); *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8. A trial court's "judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the conviction.' "    *Hill*, 2013-Ohio-717, 2013 WL 784643, ¶ 8, quoting *Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717.

Because "a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency," a determination that a conviction is supported by the manifest weight of the evidence is also dispositive of the issue of sufficiency. (Citation omitted.) *State v. McCrary*, 10th Dist. Franklin No. 10AP-881, 2011-Ohio-3161, 2011 WL 2536451, ¶ 11; *State v. Miller*, 2d Dist. Montgomery No. 25504, 2013-Ohio-5621, ¶ 48, citing *McCrary*, 2011-Ohio-3161, ¶ 11.

*State v. Mattox,* 2018-Ohio-992, 108 N.E.3d 1139, ¶ 23-24 (2d Dist.).

{¶ 26} R.C. 2919.22 provides:

(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support. * * *

(B) No person shall do any of the following to a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age:

* * *

(3) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child;

* * *

(E)(1) Whoever violates this section is guilty of endangering children.

* * *

R.C. 2919.22(E)(2)(b) further provides that, If the offender previously has been convicted of an offense under this section or of any offense involving neglect, abandonment, contributing to the delinquency of, or physical abuse of a child, the offense is a felony of the fourth degree, subject to certain exceptions.

{¶ 27} The culpable mental state for endangering children is recklessness. *State v. Greenlee*, 2d Dist. Montgomery No. 24660, 2012-Ohio-1432, ¶ 11. R.C. 2901.22(C) provides:

A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶ 28} " 'Substantial risk' means a strong possibility, as contrasted with a remote

or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

{¶ 29} In *Kamel,* 12 Ohio St.3d 306, 466 N.E.2d 860, on which Klofta relies, the Supreme Court of Ohio held:

> It is not necessary to show an actual instance or pattern of physical abuse on the part of the accused in order to justify a conviction under R.C. 2919.22(A). Affirmative acts of torture, abuse, and excessive acts of corporal punishment or disciplinary measures are expressly covered under division (B) of the section. Division (A) is concerned with circumstances of neglect as is indicated by the Committee Comment to R.C. 2912.22. Manifestly, such neglect is characterized by acts of omission rather than acts of commission. See, *e.g., State v. Sammons* (1979), 58 Ohio St.2d 460, 391 N.E.2d 713. Accordingly, an inexcusable failure to act in discharge of one's duty to protect a child where such failure to act results in a substantial risk to the child's health or safety is an offense under R.C. 2919.22(A).

(Footnote omitted.) *Id.* at 308-09.

{¶ 30} In *Calhoun,* 8th Dist. Cuyahoga No. 105521, 2018-Ohio-1758, which Klofta asserts is dispositive, the defendant was charged with violating R.C. 2919.22(A) and (B) after he grabbed his son's arm, shook him, removed him from a vehicle, and poked him in the chest. *Id.* at ¶ 4. The Eighth District began its analysis, citing *Kamel,* "by ruling out a violation of subsection (A)." It noted: "The Ohio Supreme Court has distinguished between the two types of child endangering by explaining that division (B) deals with

affirmative acts of physical abuse whereas division (A) is concerned with circumstances of neglect." *Id.* at ¶ 13. The court reversed the defendant's conviction under subsection (B), noting that the record reflected "a frustrated and angered parent confronting his child over a perceived infraction in a manner that was imperfect but ultimately not harmful." *Id.* at ¶ 16.

{¶ 31} In *Gaver*, 5th Dist. Stark No. 2015CA00204, 2016-Ohio-7055, upon which the trial court relied, the defendant was charged with two counts of child endangering; according to the bill of particulars, Count I referenced his abuse of a child, "causing a subdural hematoma and retinal hemorrhages, serious physical harm," and Count II referenced defendant's "creat[ing] a substantial risk to the health or safety" of the child, while being the person in loco parentis, by violating a duty of care, protection, or support to the health or safety of the child, which resulted in serious physical harm. The jury found Gaver not guilty of Count I and guilty of Count II. *Id.* at ¶ 50.

{¶ 32} The Fifth District determined as follows:

> The difference between Counts I and II can be summarized as inflicting an abusive injury (section B) versus violating a duty of care (section A). The former is a more serious offense in degree of penalty than the latter. We find the verdicts are not inconsistent. The jury could reasonably have found appellant guilty of violating a duty of care, protection and support (Count II) but not guilty of committing an abusive act (Count I).
>
> * * * [A]ppellant presents us with no authority in support of his premise that a conviction pursuant to R.C. 2919.22(A) may only be supported where a defendant failed to seek medical care for a child.

Our review of relevant authority convinces us that R.C. 2919.22(A) addresses a wider category of cases than those described by appellant in which a defendant fails to promptly seek medical attention for a child under his or her care. This section may also apply where a defendant has failed to protect the child from harm inflicted upon the child while in the defendant's care, even if the jury is not convinced the defendant personally inflicted the injury. Under R.C. 2919.22(A), appellee was required to prove beyond a reasonable doubt that (1) appellant was the parent, guardian, custodian, person having custody or control, or person *in loco parentis* of [the child], and (2) appellant recklessly violated a duty of protection, care or support imposed by law which created a substantial risk to [the child's] health or safety. *State v. McGee,* 79 Ohio St.3d 193, 680 N.E.2d 975 (1997), syllabus. * * *

It is not necessary to show an actual instance or pattern of physical abuse on the part of the accused in order to justify a conviction under R.C. 2919.22(A). *State v. Kamel,* 12 Ohio St.3d 306, 309, 466 N.E.2d 860 (1984). A parent has a clear duty imposed by law to protect his or her child from abuse and to care for the child's injuries. See *State v. Sammons,* 58 Ohio St 2d 460, 463, 391 N.E.2d 713 (1979), appeal dismissed, 444 U.S. 1008, 100 S.Ct. 655, 62 L.Ed.2d 637 (1980)[1]. It is an offense under R.C. 2919.22(A) when one fails, without excuse, to act in discharge of one's duty

---

[1] In *Sammons*, the defendant took no action when his wife burned their children with hot scissors, and he then failed to seek medical care for their injuries. *Id.*

to protect one's child, where the result is a substantial risk to the child's health or safety. *Kamel,* * * * 12 Ohio St.3d at 309.

Appellant does not contest the jury's findings that he was the person having custody or control of [the child] or that [the child] sustained serious physical harm. He argues simply that appellee presented no evidence that he breached a duty of care to [the child]. We find sufficient credible evidence appellant breached his duty to protect [the child]. According to appellee's evidence, [the child] was a healthy two-year-old at the time he was entrusted to appellant's care, although he had some developmental delays. [The child's] doctors agreed he suffered one or more significant blunt force traumas to his head with a violent shaking or rotational component, resulting in injuries characteristic of inflicted head injury: significant subdural hematoma and retinal hemorrhages in both eyes. While in appellant's care, [the child] first exhibited symptoms of the injuries, including lethargy, an apparent seizure, and collapse. Appellee's expert opined the injuries did not result from an accident or other non-accidental cause; [the treating physician] unequivocally testified the injury resulted from an act of abuse.

Based on the evidence, the jury could have reasonably inferred appellant recklessly failed to protect [the child] from serious physical harm while he was in his care. Ample evidence was presented to allow the jury to rationally find [the child's] injuries occurred as the result of an intentional infliction of a significant force. The jury could further rationally infer that

appellant, as the sole caregiver at the time [the child] became symptomatic, was the person responsible for [the child's] injuries, and that appellant either inflicted the injury to [the child's] head himself or failed to protect him from such injury. See, *State v. Brooks,* 10th Dist. Franklin No. 00AP–1440, 2001 WL 1117464, unreported (Sept. 25, 2001).[2] The jury accordingly could have concluded appellant recklessly violated a duty of care to prevent serious harm to [the child] during the time he was in defendant's sole care. *Id.* Construed in favor of appellee, the evidence was sufficient to allow the jury to find beyond a reasonable doubt that defendant violated R.C. 2919.22(A).

(Footnote added.) *Id.* at ¶ 52-57.

{¶ 33} The following was significant to the *Gaver* court:

Appellant offers no authority that a conviction pursuant to R.C. 2919.22(A) is not supported in a case in which the state's theory is the child's injuries resulted from violent forceful trauma while in the defendant's care. The case law we have reviewed indicates that R.C. 2919.22(A) applies when a child is injured while in a defendant's care, rising to the level of an inexcusable failure to act in discharge of a duty to protect a child. See,

---

[2] Brooks was convicted of violating R.C. 2919.22(A) and (B), and the Tenth District concluded that "the jury could have reasonably inferred defendant recklessly abused [the child] or failed to protect him from serious physical harm while he was in her care. Ample evidence was presented to allow the jury to rationally find [the child's] injuries, characteristic of shaken baby syndrome, occurred as the result of an intentional infliction of a significant force. The jury could further rationally infer that defendant, as the sole caregiver at the time [the child] became symptomatic, was the person responsible for [the child's] injuries, and that defendant either inflicted the injury herself * * * or failed to protect [the child] from such injury." *Brooks* at *6.

*e.g., State v. Humphries,* 5th Dist. Stark No. 06CA00156, 2008-Ohio-388 [significant circumstantial evidence established child suffered from shaken baby syndrome; defendant failed to provide a reasonable explanation for child's injuries; defendant exhibited suspicious behavior both on the day child was admitted to the hospital and in the following days; defendant's account contained numerous inconsistencies; and expert testified that fall as described could not have caused the fatal injury, thus medical testimony and evidence demonstrate appellant created substantial risk of harm resulting in head injury]; *State v. Cruz,* 9th Dist. Lorain No. 99CA007411, 2000 WL 1026694, *2 (July 26, 2000) [defendant violated duty of care to child by shaking her violently]; *State v. Calise,* 9th Dist. Summit No. 26027, 2012-Ohio-4797, ¶¶ 5-7 [defendant was only adult with child when she suffered severe brain injuries, extensive expert medical testimony established injuries were the result of non-accidental trauma, and injuries could not possibly have occurred from simple fall defendant described]; *State v. Swain,* 4th Dist. Ross No. 01CA2591, 2002-Ohio-414[3] [defendant burned child's fingers, which he claimed was accidental]; *State v. Scott,* [3d]

---

[3] In *Swain*, the defendant was convicted of violating R.C. 2919.22(A) and (B), and the appellate court concluded that the jury had before it sufficient evidence from which to conclude, beyond a reasonable doubt, that the defendant had committed the offenses. With respect to the R.C. 2919.22(A) conviction, the court concluded that the evidence established that defendant had burned the child's fingers. Defendant had claimed that he caused the burns by accident and that no evidence of recklessness existed, but the jury heard both parties' evidence and arguments and rejected his claim.

Dist. Hardin No. 6-07-17, 2008-Ohio-86, ¶ 22[4] [injuries occurred when only defendant had access to the child; jury could have disbelieved defendant's explanation based upon expert testimony, and jury could have found defendant recklessly created a substantial risk of harm to child's health or safety by swinging him in forceful manner]; *State v. Flory,* 3d Dist. Van Wert No. 15-04-18, 2005-Ohio-2251, ¶ 7 [appellee's evidence established defendant's explanations of accidents did not explain extent of child's injuries, injuries were consistent with abuse, and reasonable juror could conclude defendant recklessly created substantial risk to health and safety of child by violating duty of care].

(Bracketed text sic; footnotes added.)   *Id.* at ¶ 59.

**{¶ 34}** Having thoroughly reviewed all of the evidence herein, we conclude that there was sufficient evidence to support Klofta's conviction, and her conviction was not against the manifest weight of the evidence.   Klofta recklessly violated a duty of care and thereby created a substantial risk to E.S.'s health and safety, resulting in injury, when she used a stun gun to discipline E.S., a young child, and failed to attend to an injury that was visible a week thereafter.[5]   In other words, Klofta failed to act in discharge of her duty to

---

[4] In *Scott*, the appellate court held that the "facts as to counts one and two were clear. [The child] sustained fractures to his collar bone, humerus, and shoulder blade.  The injury occurred during a time when only [defendant] had access to the child.  Although [defendant] had an explanation, which appears to be plausible, for why [the child] had been favoring his right arm, the jury could have easily disbelieved such theory after hearing * * * expert testimony and viewing the physical evidence showing [the child's] injuries.  If the jury believed [the State's expert], which it apparently did, it could have easily found that [defendant] had recklessly created a substantial risk of harm to [the child's] health or safety by swinging him in such a forceful manner."

[5] *See State v. Smith*, 11th Dist. Portage No. 2013-P-0083, 2014-Ohio-4300, ¶ 35.

protect E.S. while the child was in her sole care. As in *Gaver, Brooks, Swain*, and *Scott*, E.S.'s injury was the result of an intentional act, and as Klofta acknowledges in her brief, any suggestion that it was committed by someone other than Klofta would have been "a ridiculous assertion given the facts of the case."

{¶ 35} Finally, we disagree with Klofta's argument that if excessive discipline is cognizable under R.C. 2921.11(A), then an indictment under R.C. 2921.11(B) would never be necessary and R.C. 2921.11(B) would be superfluous. While Klofta asserts that the State acknowledged that this was "an excessive discipline case" under R.C. 2921.11(B)(3), that subsection requires a finding that the discipline "create[d] a substantial risk of serious physical harm."[6]

{¶ 36} Based upon the foregoing, Klofta's assigned errors are overruled, and the judgment of the trial court is affirmed.

. . . . . . . . . . .

HALL, J., and WELBAUM, J., concur.

---

("Although temporary in nature, the use of a stun gun can cause substantial physical pain. * * * We note that many courts, as well as legislatures, have deemed it appropriate to characterize stun guns as dangerous or deadly weapons, possible of inflicting substantial physical injury.")

[6] " R.C. 2901.01(A)(5) states: 'Serious physical harm to persons' means any of the following: (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; (b) Any physical harm that carries a substantial risk of death; (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement; (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."

Copies sent to:

Mathias H. Heck, Jr.
Lisa M. Light
John A. Fischer
Hon. Mary Katherine Huffman