[Cite as *State v. Graham*, 2024-Ohio-5409.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 30081 |
| | : | |
| v. | : | Trial Court Case No. 2021 CR 01598 |
| | : | |
| JONATHAN R. GRAHAM | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on November 15, 2024

. . . . . . . . . . .

ANTHONY R. CICERO, Attorney for Appellant

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Attorney for Appellee

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant Jonathan R. Graham appeals from his conviction for endangering children.   For the reasons set forth below, we affirm.

**I.      Factual and Procedural Background**

{¶ 2} Graham and M.R. are the parents of A.G. who was born six weeks prematurely on March 22, 2021. Because she had difficulty breathing, A.G. remained in the neonatal intensive care unit for the first 10 days of her life. The newborn continued to experience medical problems including difficulty breathing, failing to gain weight, and vomiting blood. She was readmitted to the hospital on three occasions between April 9 and May 1, 2021.

{¶ 3} On the evening and night of May 6, 2021, Graham tended to the infant at home. The following morning, he informed M.R. that the baby had blood in her mouth. After a call to 911, the infant was transported by paramedics to Dayton Children's Hospital's South Campus, where medical personnel determined that she had a torn frenulum[1] and 14 broken ribs. The baby was transported to the main hospital campus in Dayton, where, due to the nature of the injuries, Montgomery County Children's Services and members of the Centerville Police Department questioned Graham. On May 11, 2021, Graham contacted police of his own accord and later went to the Centerville Police Department headquarters, where he was interviewed a second time. Following that interview, Graham was placed under arrest.

{¶ 4} On May 18, 2021, Graham was indicted on one count of endangering children (parent/serious harm) in violation of R.C. 2919.22(A). Graham filed a motion to suppress statements he made during the two interviews. Following a hearing, the trial court granted the motion. The State appealed, and this court reversed the suppression ruling. *State v. Graham*, 2022-Ohio-2600 (2d Dist.).

---

[1] The frenulum is a thin band of tissue that connects the tongue to the floor of the mouth.

{¶ 5} On remand, Graham waived his right to a jury trial, and a bench trial was held in December 2023. The trial court found Graham guilty as charged and sentenced him to community control sanctions.

{¶ 6} Graham appeals.

## II. Sufficiency and Manifest Weight

{¶ 7} Graham asserts the following for his first and second assignments of error:

THERE IS INSUFFICIENT EVIDENCE OF A CONVICTION IN VIOLATION OF DEFENDANT'S RIGHT TO DUE PROCESS OF LAW UNDER THE 5TH AND 14TH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE 1, SECTION 16 OF THE OHIO CONSTITUTION.

THE MANIFEST WEIGHT OF THE EVIDENCE DOES NOT SUPPORT A CONVICTION.

{¶ 8} Graham contends that the State failed to present evidence sufficient to sustain his conviction for endangering children and that his conviction was against the manifest weight of the evidence.

{¶ 9} "[S]ufficiency is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine

whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Marshall*, 2010-Ohio-5160, ¶ 52 (2d Dist.), quoting *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the crime's essential elements proven beyond a reasonable doubt. *Id.*

{¶ 10} When an appellate court reviews whether a conviction is against the manifest weight of the evidence, "[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [trial court] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A case should not be reversed as being against the manifest weight of the evidence except " 'in the exceptional case in which the evidence weighs heavily against the conviction.' " *Id.*

{¶ 11} "Although sufficiency and manifest weight are different legal concepts, manifest weight may subsume sufficiency in conducting the analysis; that is, a finding that a conviction is supported by the manifest weight of the evidence necessarily includes a finding of sufficiency." (Citations omitted.) *State v. McCrary*, 2011-Ohio-3161, ¶ 11 (10th Dist.). Thus, a determination that a conviction is supported by the weight of the evidence will also be dispositive of sufficiency. *State v. Farra*, 2022-Ohio-1421, ¶ 50 (2d Dist.).

{¶ 12} Graham was convicted of endangering children in violation of R.C. 2919.22.

This statute provides, in pertinent part, that "[n]o person, who is the parent . . . of a child under eighteen years of age . . . shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." R.C. 2919.22(A). The offense is a felony of the third degree if it results in serious physical harm to the child. R.C. 2919.22(E)(2)(c). Substantial risk is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(8). The culpable mental state for the offense of endangering children is recklessness. *State v. Klofta*, 2020-Ohio-5032, ¶ 27 (2d Dist.), citing *State v. Greenlee*, 2012-Ohio-1432, ¶ 11 (2d Dist.). "A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist." R.C. 2901.22(C).

{¶ 13} There is no dispute that A.G. suffered serious physical harm. She had 17 fractures to 14 of her ribs, including fractures to posterior ribs; based upon the different stages of healing, the fractures occurred on at least three different dates. Expert testimony presented by the State at trial established that posterior rib fractures are "highly associated with inflicted injuries in infants," and the mechanism of injury for such fractures consists of "squeezing the chest with palms along the side of the chest, thumbs over the sternum, and fingers over the back." State's Ex. 12, Slide 10; Tr. p. 180.

{¶ 14} The State's evidence of recklessness consisted of admissions made by Graham. Specifically, during his police interview, Graham admitted he had, at least once, squeezed the child to his chest while attempting to comfort her. Importantly, Graham also demonstrated holding the child in the exact manner that the State's expert identified as the cause of posterior rib fractures. Although Graham stated that he did not hear anything indicating he had broken the infant's ribs, he did state that he thought he had squeezed her too tightly. The State presented evidence that Graham had admitted causing the bruising to the infant's back by patting her too forcefully while attempting to get her to burp after feedings. He also admitted to "slightly tossing" the newborn into the air in an attempt to soothe her.

{¶ 15} Additionally, the record demonstrates that on May 7, 2021, Graham asked to speak "privately" with one of A.G.'s treating physicians. Graham informed the doctor that he was overwhelmed by the infant's needs and had been experiencing "significant issues" with anxiety and panic attacks since her birth. He stated that he felt "out of control" with the child. Graham stated that he thought he was at fault for her injuries because there had been "some squeezing." Graham also expressed "guilt and remorse" to the doctor.

{¶ 16} The State also presented text messages Graham sent to M.R. after the May 7 hospitalization. One text stated, ""I love you and our baby and had no idea I was hurting her at all. I am terribly sorry. . . terribly sorry." Another text stated, ". . . Please work on forgiving me and knowing that I didn't do it on purpose or even consciously." Finally, one text stated, "A.G. was unfortunately hurt by my struggles. That's not okay."

{¶ 17} The evidence established that Graham had engaged in a pattern of rough handling of an infant who was approximately seven weeks old at the time of the May 7 hospital admission. This evidence, coupled with his admission to the doctor that he was at fault for the injuries due to squeezing the baby, supported the trial court's finding that Graham had been reckless in his conduct.

{¶ 18} We are cognizant of Graham's argument that, although A.G. "had a multitude of conditions that lead to bone density problems [which] made [her] particularly susceptible to fractures," the health care providers had not informed him of such fragility. However, neither of his experts actually opined that the child was more susceptible to fractures than any other infant. Instead, both experts merely stated that the infant had medical issues that could lead to more fragile bones. In contrast, the State presented competent, credible evidence that the child's bones were well-mineralized and that testing did not reveal any issue with abnormal bone fragility. Thus, this argument is not well-taken.

{¶ 19} From our review of the record, we conclude that the State presented competent, credible evidence to support the conviction for endangering children. This is not the exceptional case in which the evidence weighed heavily against the conviction. Because we conclude that the conviction was not against the manifest weight of the evidence, we also conclude that it was supported by sufficient evidence.

{¶ 20} Accordingly, Graham's assignments of error are overruled.

### III.    Conclusion

{¶ 21} The judgment of the trial court is affirmed.

. . . . . . . . . . . . .

EPLEY, P.J. and WELBAUM, J., concur.